No. 24-7360

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

EDWARD ALLYN HUDACKO,

*Plaintiff-Appellant,*

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA;
JANET YI MAN LEE; DIANE EHRENSAFT; STEPHEN ROSENTHAL;
ASAF ORR; NATHANIEL BIGGER; DANIEL HARKINS;
CHRISTINE UNDERHILL, FKA CHRISTINE HUDACKO,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-05316-SI (Hon. Susan Illston)

## PETITION FOR REHEARING OR REHEARING EN BANC

Gene C. Schaerr
James C. Phillips
SCHAERR | JAFFE LLP
1717 K Street NW
Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Edward Allyn Hudacko is an individual, and thus, no corporate disclosure is required.

*/s/Gene C. Schaerr*
Gene C. Schaerr

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..............................................i

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................3

    A.    Events leading up to litigation. ..................................................3

    B.    The litigation. .........................................................................6

        1.    Qualified Immunity ..........................................................7

        2.    Fraudulent Concealment Claim ..........................................8

        3.    Intentional Infliction of Emotional Distress Claim ...........8

ARGUMENT ....................................................................................9

    I.    The Qualified Immunity Holding Conflicts With
        Precedent of this Court and the Supreme Court. ......................9

        A.    The Panel Overlooked Clearly Established Law that
            Would Deny Defendants Qualified Immunity. ..................9

        B.    The Panel Improperly Failed to Take Hudacko's
            Allegations as True When Deciding Qualified
            Immunity at the Pleading Stage. ....................................11

        C.    In Failing to Consider the Context of Medical
            Defendants' Training and Experience, the Panel
            Ignored Supreme Court Precedent and Conflicted
            with at Least Two Other Circuits ...................................14

    II.    The Panel's Failure to Recognize a Duty to Disclose for
        the Fraudulent Concealment Claim Conflicts with
        California and U.S. Supreme Court Precedent, Including
        Recent Clarification from the California Supreme Court.........16

III.   The Panel Decision Erroneously Held That Surgically
       Sterilizing a Child Without Parental Consent—the
       Conduct Pleaded Here—Is Not Outrageous, an Issue of
       Exceptional Importance to Parents Throughout the Ninth
       Circuit. ........................................................................ 19

CONCLUSION ........................................................................ 21

CERTIFICATE OF COMPLIANCE........................................ 23

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797 (Cal. 1997)..............17

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2011).....................................15

*Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006) ...................................13

*Carroll v. Carman*, 574 U.S. 13 (2014) ...................................................10

*Fuentes v. Perez*, 136 Cal.Rptr. 275 (1977) .........................................9, 20

*Geffner v. Bd. of Psych.*, 318 Cal.Rptr.3d 761
   (Ct. App. 2024).................................................................................18

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................14

*Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008) ...........................................15

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018)..................... 11, 12, 14, 21

*Lee v. Poudre Sch. Dist. R-1*, No. 25-89, 2025 WL 2906469
   (U.S. Oct. 14, 2025) ..........................................................................2

*Mullenix v. Luna*, 577 U.S. 7 (2015) .................................................12, 13

*New v. Denver*, 787 F.3d 895 (8th Cir. 2015) ..........................................15

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*,
   145 S.Ct. 14 (2024) ............................................................................2

*Parham v. J.R.*, 442 U.S. 584 (1979)................................................10, 18

*Plumhoff v. Rickard,* 572 U.S. 765 (2014) .............................................15

*Pope v. County of San Diego,* 719 F.Supp.3d 1076 (S.D. Cal. 2024) ........7

*Rainer v. Buena Cmty. Mem'l Hosp.*, 95 Cal.Rptr. 901
   (Ct. App. 1971)..................................................................................17

*Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213 (Cal. 2024) ......................17

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) .............................10, 19

*White v. Pauly*, 580 U.S. 73 (2017)..........................................................13

iv

**Constitutional Provision**

U.S. Const. amend. XIV ....................................................................6

**Statutes**

42 U.S.C. §1983 ......................................................................6, 9

Cal. Fam. Code §6922 ................................................................18

Cal. Fam. Code §6925 ................................................................18

Cal. Fam. Code §6929 ................................................................18

**Rule**

Fed. R. Civ. P. 12 .......................................................................11

## INTRODUCTION

This is a case about the sterilization of a child.

That tragedy was made possible by state actors who trampled the oldest of the fundamental liberty interests recognized by the Supreme Court—the constitutional right to direct the upbringing of one's child, including directing that child's medical treatment. State medical officials sterilized the child without the consent of his father, Petitioner Ted Hudacko, despite a court order requiring Hudacko's permission.

But this case is about more than Hudacko's tragedy. The case presents questions of exceptional importance to parents throughout the Ninth Circuit.

The state defendants facilitating or performing the sterilization, under the guise of gender identity-related surgery on a minor, have escaped any legal consequence. The panel decision approving that result conflicts with precedent from this Court, other Circuits, and the Supreme Court on qualified immunity and dismissal on the pleading, as well as California precedent on the state-law claims.

The importance of the issues warrants rehearing to bring the decision in line with precedent. At least three Supreme Court Justices

have recently recognized that state actors "purposefully interfer[ing] with parents' access to critical information about their children's gender-identity choices and [state actors'] involvement in and influence on those choices" are both "troubling … and tragic." *Lee v. Poudre Sch. Dist. R-1*, No. 25-89, 2025 WL 2906469, *1 (U.S. Oct. 14, 2025) (statement by Alito, J., joined by Thomas & Gorsuch, JJ.).

These Justices are properly "concerned that some federal courts are 'tempted' to avoid confronting a 'particularly contentious constitutional question': whether a [state actor] violates parents' fundamental rights 'when, without parental knowledge or consent, it encourages a student to transition to a new gender or assists in that process.'" *Id.* (quoting *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, 145 S.Ct. 14, 14 (2024) (Alito, J., dissenting from denial of certiorari)) (internal alterations omitted). The qualified immunity holding in this case exemplifies that very concern, which these Justices deem to be of "great and growing national importance." *Id.* (quoting *Parents Protecting*, 145 S.Ct. at 14).

For these reasons, panel rehearing or rehearing en banc should be granted.

2

## BACKGROUND

### A.  *Events leading up to litigation.*

Just over six years ago, Hudacko's then-wife told him that she was leaving him and that their 15-year-old son was "transgender." ER1020-21. Surprised at the first bit of news, Hudacko was dumbfounded at the second—his son had shown no signs that he was not completely comfortable as a boy.

As the divorce progressed to a custody determination, little did Hudacko know that the family law judge handling the matter had a "transgender" son of her own and later—with some of the named Defendants here—would train other California judges on how to promote "transgender" rights in family courts. ER1024-26. When the judge asked Hudacko whether he accepted his son's transgenderism, as though it was beyond dispute, and Hudacko expressed doubt as to that diagnosis and the lack of data supporting treatment, the judge stripped Hudacko of all custody rights concerning his son except one. ER1018-19, ER1023.

That one remaining vestige of his constitutional right to direct his child's upbringing was that no "gender identity related surgery" could be performed on their son while still a minor without Hudacko's written consent or an order from the family court. ER966-67. Otherwise,

3

Hudacko's ex-wife (Defendant Underhill) could make all medical and other decisions for their son, including whether to accept Defendant UCSF's recommendation regarding "hormone therapy." *Id.* (Any other provider of "hormone therapy" was prohibited by the court order). *Id.*

Hudacko pleaded that UCSF had requested and received from his ex-wife the court order prohibiting any gender identity related surgery without his consent, as he learned in a September 29, 2020 email from his ex-wife. ER967-68. Suspicious, a few weeks later Hudacko wrote an email to the state medical defendants, the court-appointed attorney for his son, his ex-wife, and her attorney, requesting access to his child's medical records and reminding them of the contents of the court order. ER968. That same email made clear that he did not consent to any gender identity "treatment" for his son. *Id.* The state defendants received the letter. ER968-69. Thus, state defendants were on notice no later than October 2020 regarding the court order and Hudacko's lack of consent.

But Defendants did not care. The Defendants are the state actors who were doctors involved in the surgery (Rosenthal and Lee), the state clinical psychologist who recommended the surgery (Ehrensaft), the state institution responsible for these actors (Regents of the University of

California), the attorney of the state institution (Orr), the court-appointed attorney for the minor child (Harkins), Hudacko's ex-wife (Underhill), and her attorney (Bigger).

Without seeking permission from Hudacko or the family court, Defendants arranged for the minor son to have a surgical implant (Supprelin) to suppress his testosterone, in conjunction with oral estrogen hormone therapy. ER967,970-71. Aware of the permanent consequences of the surgery, Defendant Underhill caused the minor child to deposit sperm into a sperm bank. ER970. The surgery was initially delayed, with Defendants' June 2021 medical notes observing that the "father is not supportive of [his son's] gender care." ER971. Those notes indicated that Hudacko's ex-wife, her attorney, the state defendant attorney, the court-appointed attorney for the minor child, in short, "everyone is working together to achieve resolution in the near future"—everyone but Hudacko. ER971.

Finally, without Hudacko's knowledge or consent, the surgery was performed in August 2021, *id.*, nearly a year after Defendants knew about the court order. Hudacko would definitively learn of the surgery after he received a quarterly statement from his insurance provider with

5

a bill for "surgery," asked his son's court-appointed counsel about it, and received confirmation that the surgery had occurred. *See* ER1002. He subsequently filed suit.

## B. *The litigation.*

Hudacko sued the defendants noted above: the two state doctors responsible for the surgery, the state psychologist who recommended it, the state attorney who worked to bring the surgery about, the state entity responsible for these actors, the court-appointed attorney for his son, his ex-wife, and her attorney. Relevant here, he raised a §1983 claim for the violation of his constitutional parental rights under the Fourteenth Amendment's Due Process Clause, as well as state-law claims of fraudulent concealment and intentional infliction of emotional distress.

The SAC noted that the family court order did not define "surgery" or "hormone therapy," but Hudacko clearly pleaded that the implants were surgery, relying on California's statutory definition of the term, a Merriam-Webster Dictionary definition, the materials of the company that makes the implant (which states that the implant "is a surgical procedure"), and USCF's own bill, which billed the medical act to Hudacko's insurance as "surgery." ER967.

The district court granted Defendants' motion to dismiss.

### 1. *Qualified Immunity*

The district court ruled, among other things, that the state actors were "entitled to qualified immunity." ER21. In doing so, the court determined that neither the parental right "in custody and control of [one's] children, which encompasses the right to make medical decisions for the child," nor "the family right to association, which includes a right for parents and children to be together when a child receives medical care" were implicated in the case. ER20 (citing *Pope v. County of San Diego,* 719 F.Supp.3d 1076, 1084-91 (S.D. Cal. 2024)). And the court determined that given the court order allowing hormone therapy but requiring Hudacko's consent for "gender identity related surgery," reasonable state actors could have believed that the implant was therapy rather than surgery, thus triggering qualified immunity. ER21.

On appeal, a panel of this Court upheld the district court's holding as to qualified immunity. The Panel correctly noted that Hudacko still maintained his constitutional parental rights as to "'any gender identity related surgery,' which required [his] consent." Slip op. at 5. But the Panel determined that "it was not clear the implant procedure fell within

7

[the] 'surgery' exception in the custody order." *Id*. And the Panel further observed that "putting aside the custody order, Hudacko cites no clearly established law creating a parental liberty interest in precluding the procedure at issue here when the other parent and minor child consent to it." *Id*. at 5-6.

### 2. *Fraudulent Concealment Claim*

The district court dismissed the fraudulent concealment claim, concluding that the SAC had not established that defendants had a duty to disclose facts to Hudacko. ER23-24. Likewise, this Court's Panel determined that Hudacko "alleged no transaction or relationship with any of the UCSF Individuals that could give rise to a duty to disclose." Slip op. at 6.

### 3. *Intentional Infliction of Emotional Distress Claim*

The district court likewise dismissed the intentional infliction of emotional distress claim, concluding that the "alleged conduct was not 'outrageous'" because the court found that "the implant procedure could reasonably [be] interpreted to be hormone therapy and not gender identity related surgery." ER53. Similarly, the Panel upheld that holding because "the district court only held that *even if* the implant procedure could be regarded as gender identity related surgery, the UCSF

8

Individuals' conduct cannot be outrageous because the implant procedure 'could reasonably [be] interpreted to be' hormone therapy under the custody order." Slip. op. at 8 (citing *Fuentes v. Perez*, 136 Cal.Rptr. 275, 279 (1977)).

## ARGUMENT

The panel decision conflicts with the precedent of this circuit, two other circuits, and Supreme Court in upholding the dismissal of the §1983 claims against the state defendants and departs from California law in upholding dismissal of the fraudulent concealment claim. The decision also concludes that it is not outrageous to sterilize an otherwise healthy minor child without legally required parental consent. Each issue is of exceptional and recurring importance, warranting rehearing or rehearing en banc on these issues of "great and growing national importance."

## I.    The Qualified Immunity Holding Conflicts With Precedent of this Court and the Supreme Court.

### A.    The Panel Overlooked Clearly Established Law that Would Deny Defendants Qualified Immunity.

For a §1983 complaint to withstand a claim of qualified immunity, a government "official [must have] violated a statutory or constitutional

right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 574 U.S. 13, 16 (2014).

And existing precedent clearly establishes that parents have a right to direct the medical care of their children. That has been so in the Ninth Circuit for at least a quarter of a century, when *Wallis v. Spencer* recognized that the Fourteenth Amendment protects "the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." 202 F.3d 1126, 1141 (9th Cir. 2000) (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979)). And for nearly a half century, the U.S. Supreme Court has recognized the parental right to direct children's mental health care, noting that "[m]ost children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment." *Parham*, 442 U.S. at 603.

That was the law the Panel should have been analyzing, and that law clearly established the right at issue here.

### B. The Panel Improperly Failed to Take Hudacko's Allegations as True When Deciding Qualified Immunity at the Pleading Stage.

Despite this clearly established law, the panel apparently thought it unclear how the court order affected Hudacko's constitutional right to direct his son's medical care because the order allowed for "hormone therapy," but still required Hudacko's consent for "any gender identity related *surgery*." ER966-67 (emphasis added). The procedure in question involved surgical implants, and so the panel thought there was enough "breathing room" in interpreting the order to trigger qualified immunity.

But in so ruling, the panel ignored the posture of the case—a Rule 12(b)(6) motion to dismiss where the factual allegations must be treated as true and construed in the light most favorable to the plaintiff. *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). And Hudacko extensively alleged that the procedure was "surgery." (Even Defendants referred to the procedure as "surgery" in their billing.) The court order expressly retains Hudacko's parental rights to direct his son's medical care as to "surgery." Thus, at the pleading stage, qualified immunity was unavailable.

This court has also recognized that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making" given the need to "balanc[e] the[] competing rules" of analyzing a motion to dismiss and qualified immunity. *Keates*, 883 F.3d at 1234-35. Thus, "when a district court dismisses a complaint for failure to state a claim based on a qualified immunity defense, we consider whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Id.* at 1235 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). And the complaint's allegations here "in light of the specific context" of the custody order show that Defendants violated clearly established precedent as to Hudacko's constitutional right to direct the medical care of his minor child. *See also id*. ("If the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims." (cleaned up)).

The panel tries to get around this by "putting aside the custody order" and faulting Hudacko for not citing "clearly established law creating a parental liberty interest in precluding the procedure at issue here when the other parent and minor child consent to it." Slip op. at 5-6. But that re-direct is a red herring.

As shown above, one cannot put aside the custody order in determining the qualified immunity question at the pleading stage. The order requires the consent of both parents for the surgery, so one parent's consent does not take away the parental right of the other under the plain language of the family court order. What is more, Supreme Court qualified immunity "case law 'do[es] not require a case directly on point' for a right to be clearly established," *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix*, 577 U.S. at 12)). Additionally, it is clearly established in the Ninth Circuit that "non-custodial parents with court-ordered … rights have a [14th Amendment] liberty interest in the … care[] … and management of their children." *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006).

Granted, a decision properly sustaining Hudacko's complaint "at the motion-to-dismiss stage sheds little light on whether the government

actors might ultimately be entitled to qualified immunity were the case permitted to proceed, at least to the summary judgment stage and the court is presented with facts providing context for the challenged actions." *Keates*, 883 F.3d at 1235 (cleaned up). But for now, under relevant case law, Hudacko's pleadings avoid having his §1983 claim against the state defendants being dismissed at this stage of the proceedings.

### C. In Failing to Consider the Context of Medical Defendants' Training and Experience, the Panel Ignored Supreme Court Precedent and Conflicted with at Least Two Other Circuits

The Panel noted that the qualified immunity analysis is from the perspective of "a reasonable person" and what they would have known. Slip op. 4 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). And the Panel concluded that "it was not clear the implant procedure fell within [the] 'surgery'" exception in the custody order." *Id*. at 5. In so analyzing, the Panel has ignored precedent by the Supreme Court some 32 years after *Harlow*, that sister circuits have relied on to add a further wrinkle, creating an inter-circuit conflict with the Panel's decision.

In *Plumhoff v. Rickard*, the Supreme Court added a context requirement to *Harlow*'s "reasonable person" standard, declaring that in

determining whether a constitutional right is clearly established for qualified immunity, courts must consider whether "any reasonable official *in the defendant's shoes* would have understood that he was violating it." *Plumhoff,* 572 U.S. 765, 778-79 (2014) (citing *Ashcroft v. al-Kidd,* 563 U.S. 731, 741-42 (2011)). As a result, at least two circuits have included the contextual considerations of training and expertise to the reasonableness analysis for qualified immunity. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (agreeing with the district court that it was appropriate to deny qualified immunity given "the officers' training and existing case law at the time"); *New v. Denver*, 787 F.3d 895, 901 (8th Cir. 2015) (examining an officer's "extensive training and experience" for the qualified immunity analysis).

The Panel here did not examine the medical defendants' "training and experience" in determining that it was reasonable for them to find that it was unclear whether the surgical implant was to be considered surgery, and thus prohibited, or hormone therapy, and thus allowed. *See* slip op. at 5. This thus puts the Panel in conflict with at least the Fourth and Eighth Circuits. What is more, had the Panel included these contextual considerations like its sister circuits, and had the Panel truly

15

applied an in-the-defendant's-shoes analysis, as required by the Supreme Court, it would have come out the other way according to the SAC's allegations: the medical defendants would have known from their training that the manufacturer of the surgical implant had clearly stated that "[i]nsertion of the SUPPRELIN LA implant is a surgical procedure." ER1034. Likewise, these were experienced doctors, having treated thousands of patients and having performed this surgery before. ER962. And, of course, the institutional medical defendant billed this procedure as "surgery." ER1002. Maybe the reasonable person on the street would have been confused about surgery versus hormone therapy in the custody order, but not those "in the defendant's shoes" with their extensive medical training and experience. To them it was clear that the surgical implant was surgery and fell under the plain language of the custody order's prohibition, defeating any claim to qualified immunity at the pleading stage.

## II. The Panel's Failure to Recognize a Duty to Disclose for the Fraudulent Concealment Claim Conflicts with California and U.S. Supreme Court Precedent, Including Recent Clarification from the California Supreme Court.

In rejecting the fraudulent concealment claim, the Panel, like the district court, concluded that the complaint "alleged no transaction or

16

relationship with any of the UCSF Individuals that could give rise to a duty to disclose." Slip op. at 6. This conclusion, based on the complaint's allegations, conflicts with California precedent, including recent clarification from the California Supreme Court, as well as U.S. Supreme Court precedent.

The California Supreme Court recently confirmed that a fraudulent concealment claim "presuppose[s] a preexisting relationship between the parties," giving as a prime example the relationship between … doctor and patient." *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1238 (Cal. 2024) (citations omitted).

And under California and U.S. Supreme Court the relationship between UCSF and Hudacko's son extended to Hudacko. "The requirement that medical care be provided to a minor only with the consent of the minor's parent or guardian remains the general rule, both in California and throughout the United States." *Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797, 801 (Cal. 1997). *See also Rainer v. Buena Cmty. Mem'l Hosp.*, 95 Cal.Rptr. 901, 907 n.14 (Ct. App. 1971) ("The consent of a parent is the proper one when the patient is a minor, not authorized otherwise by law, incapable of giving consent."). There are exceptions,

such as when a minor is medically emancipated, Cal. Fam. Code §6922; for drug and alcohol treatment, Cal. Fam. Code §6929; for pregnancy prevention or treatment, Cal. Fam. Code §6925(b); and in emergencies, *Geffner v. Bd. of Psych.*, 318 Cal.Rptr.3d 761, 774-77 (Ct. App. 2024).

But no exemptions exist here. Not only was Hudacko's minor son not medically emancipated, but Hudacko also retained explicit authority to withhold consent for any gender identity related surgery under the family court order. Likewise, the surgery was not for drug and alcohol treatment, nor for pregnancy treatment or prevention. And even in the pregnancy context, the code clearly states that it "does not authorize a minor to be sterilized without the consent of the minor's parent or guardian." Cal. Fam. Code §6925(b). Finally, this was no emergency, as the process took approximately a year. ER964,971.

A sufficient relationship between a minor's doctor and the minor's parents also arises under the Fourteenth Amendment. That is because "[m]ost children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment." *Parham*, 442 U.S. at 603. Thus, "[t]he [Fourteenth Amendment] right to family association includes the right of parents to

18

make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141. This constitutional right would be meaningless if the doctor-patient relationship did not extend to parents of minor patients.

* * *

In sum, the panel decision disregards the complaint's clear allegations, which must be taken as true, and conflicts with relevant California and Supreme Court case law in rejecting the fraudulent concealment claim. This issue is of exceptional importance because the panel decision exempts any physician from fraudulent concealment liability to the parents of the physician's minor patients when that doctor engages in otherwise tortious conduct. Hence, rehearing or rehearing en banc should be granted on this issue.

## III. The Panel Decision Erroneously Held That Surgically Sterilizing a Child Without Parental Consent—the Conduct Pleaded Here—Is Not Outrageous, an Issue of Exceptional Importance to Parents Throughout the Ninth Circuit.

Finally, the Panel rejected Hudacko's argument for the intentional infliction of emotional distress claim that "that whether the implant procedure 'could reasonably [be] interpreted to be' hormone therapy was a factual dispute that should not have been decided at the pleading

19

stage." Slip op. at 8. The Panel did so by reasoning that "the district court only held that *even if* the implant procedure could be regarded as gender identity related surgery, the UCSF Individuals' conduct cannot be outrageous because the implant procedure 'could reasonably [be] interpreted to be' hormone therapy under the custody order." *Id.* (citing *Fuentes*, 136 Cal.Rptr. at 279).

But that is not what Hudacko pleaded. He pleaded that the surgical implant was surgery, and that Defendants recognized that fact. Under California law, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Fuentes*, 136 Cal.Rptr. at 279 (citation omitted). And "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Id.* (citation omitted).

The district court—and the panel—were required to "take all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates*, 883 F.3d at

1234 (cleaned up). Under that standard, the only issue was whether a jury could reasonably find that Defendants acted outrageously in sterilizing a minor child via surgery without a father's legally required consent.

What is more, it is hard to see a question of more exceptional importance to parents in the Ninth Circuit than whether it is outrageous for a state actor to sterilize their child without their consent.

## CONCLUSION

While about the tragedy of one parent, this case presents multiple questions of exceptional importance to all parents. And this issue of constitutional parental rights bulldozed by the gender identity agenda of state actors has been recognized by at least three U.S. Supreme Court Justices as one of "great and growing national importance." Also, the panel decision created conflicts within this Circuit, with at least two Sister Circuits, and with the Supreme Court. For these reasons, the petition for rehearing or rehearing en banc should be granted.

November 4, 2025

Respectfully submitted,

*/s/ Gene C. Schaerr*
Gene C. Schaerr
James C. Phillips
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Circuit Rule 40-1(a) because it contains 3,999 excluding the parts exempted by Fed. R. App. P. 32(f), and this petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Gene C. Schaerr
Gene C. Schaerr

*Counsel for Plaintiff-Appellant*

NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 21 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EDWARD ALLYN HUDACKO, | No. 24-7360 |
| Plaintiff - Appellant, | D.C. No. 3:23-cv-05316-SI |
| v. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA; JANET YI MAN LEE; DIANE EHRENSAFT; STEPHEN ROSENTHAL; ASAF ORR; NATHANIEL BIGGER; DANIEL HARKINS; CHRISTINE UNDERHILL, | MEMORANDUM* |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted October 8, 2025
San Francisco, California

Before: S.R. THOMAS, NGUYEN, and BRESS, Circuit Judges.

Edward Hudacko appeals the following orders by the district court: (1) the

dismissal of his Section 1983 action against Daniel Harkins; Nathaniel Bigger;

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Christine Underhill; University of California San Francisco ("UCSF") doctors Janet Yi Man Lee, Diane Ehrensaft, and Stephen Rosenthal; and the UCSF Child and Adolescent Gender Center's Legal Director Asaf Orr; (2) the dismissal of his fraudulent concealment and intentional infliction of emotional distress ("IIED") claims against Dr. Lee, Dr. Ehrensaft, Dr. Rosenthal, and Orr (collectively, the "UCSF Individuals"); and (3) the denial of six of his requests for judicial notice. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

## I.    Section 1983 Claims

### A.  *Harkins, Bigger, and Underhill*

Only a state actor can be liable under 42 U.S.C. § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). A plaintiff may demonstrate that a private individual was a *de facto* state actor under "the joint action test" by "proving the existence of a conspiracy" or by showing that the "private party was a willful participant in joint action with the State or its agents." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). "To prove a conspiracy between the state and private parties under section 1983, [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation modified).

---

[1] We do not address Hudacko's withdrawn arguments that the district court judge was biased.

The district court correctly concluded that Harkins, Bigger, and Underhill are not *de facto* state actors. Hudacko's bare assertions of a "scheme" and "joint effort," in his Second Amended Complaint ("SAC") are "formulaic recitation[s] of" the joint action test that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (holding that the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Considering only the factual allegations in his SAC, Hudacko alleges that Harkins 1) was aware of Provision 7b of the custody order, 2) knew Hudacko opposed puberty blockers and surgical procedures, 3) excluded Hudacko from the decision regarding the implant procedure, and 4) had email exchanges and calls with other Defendants. But Hudacko does not allege that Harkins had a duty to include Hudacko in any discussions between Harkins and other defendants. Although Hudacko alleges there was a conference call between Harkins, Orr, and Bigger, the only information Hudacko cites to support his "information and belief" that the defendants discussed the "scheme" during this call is a billing record showing that Harkins had a "conference call with counsel" that lasted 0.35 hours. To allege based on that billing record that the call led to an "agreement for Defendants to perpetrate the scheme" is an "unwarranted deduction[] of fact" at

3                                                                                    24-7360

best—something we are not required to accept as true. *See In re Gilead*, 536 F.3d at 1055.

The SAC also cites UCSF's progress notes that Underhill was working with Bigger, Harkins, and Orr to "achieve resolution in the near future," but absent other facts, these notes do not in any way show an improper scheme or conspiracy to violate Hudacko's rights. There is nothing surprising or nefarious about Harkins and Bigger, as the lawyers representing Minor and Underhill respectively, working with Underhill as permitted by the custody order. Hudacko's only other factual allegation against Bigger is that the latter billed time for his legal work. Again, citing the billing for legal services as support for a claim of conspiracy is not a plausible allegation. *See Iqbal*, 556 U.S. at 678 (holding the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"). Nor was Underhill a *de facto* state actor, as the district court correctly explained.

### B. The UCSF Individuals

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [E]xisting precedent

must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citation modified).

The district court correctly concluded that the UCSF Individuals are entitled to qualified immunity because Hudacko's alleged right was not clearly established. Although the rights of parents in the "care, custody, and control of their children" is a well-established liberty interest under the Fourteenth Amendment, *Troxel v. Granville*, 530 U.S. 57, 65 (2000), Hudacko's right cannot be defined that broadly because the custody order stripped him of almost all his parental rights. Under the custody order, Underhill had sole medical decision-making authority over Minor with the exception of "any gender identity related surgery," which required Hudacko's consent.

Hudacko cites no clearly established law under similar facts. Instead, he contends that the "explicit language" of the custody order provision clearly establishes his right. But it was not clear the implant procedure fell within Provision 7b's "surgery" exception in the custody order. *See Carroll*, 574 U.S. at 16; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."). And putting aside the custody order, Hudacko cites no clearly established law creating a parental liberty interest in precluding the procedure at issue here when the other parent and minor child

consent to it.

## II.     Fraudulent Concealment Claim

Under California law, one of the required elements for fraudulent concealment is that the defendant has "a duty to disclose" to the plaintiff. *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014). Where the defendant is not in a fiduciary relationship with the plaintiff, fraudulent concealment is actionable only if there exists "some other relationship between the plaintiff and defendant in which a duty to disclose can arise." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997).

Hudacko alleged no transaction or relationship with any of the UCSF Individuals that could give rise to a duty to disclose. *See Graham*, 226 Cal. App. 4th at 606. Orr was an attorney representing the UCSF Center, and his "duty of undivided loyalty" was to his client, not to Hudacko. *See LiMandri*, 52 Cal. App. 4th at 338.

Hudacko alleges that Drs. Lee, Ehrensaft, and Rosenthal (collectively, "UCSF Doctors") owed him a duty to disclose because the custody order named UCSF explicitly as Minor's medical provider and granted them "special decision-making powers." This contention is unsupported because the custody order does not grant UCSF any powers. Rather, it only conditions Underhill's authority to consent to hormone therapy for Minor on UCSF recommending that treatment.

Thus, the custody order does not create a "contractual agreement" between Hudacko and UCSF that gives rise to a duty to disclose.[2]  *See LiMandri*, 52 Cal. App. 4th at 337.

## III.  IIED Claim

Under California law, one of the elements of a prima facie case of IIED is "outrageous conduct by the defendant."  *Little v. Stuyvesant Life Ins. Co.*, 67 Cal. App. 3d 451, 461 (1977).

The custody order permits Minor "to pursue the services provided by UCSF as to [Minor's] gender identity, and shall be permitted to commence hormone therapy, if recommended by UCSF," but Minor could not obtain "any gender identity related surgery until they are 18 years of age, absent written agreement from both parties . . . or an order of the court."  As we explained, the implant procedure could reasonably be interpreted to be hormone therapy and not gender identity related surgery.  But even if the procedure constituted "gender identity related surgery" under the custody order, defendants' alleged conduct is not "so extreme as to exceed all bounds of that usually tolerated in a civilized society."

---

[2] Hudacko also alleges the UCSF Doctors owed him a general duty of care under Cal. Civ. Code § 1714(a), which provides that "everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person."  That duty is limited, however, to negligence cases—not fraudulent concealment, which is governed by other provisions of California Civil Code.  *See* 46 Cal. Jur. 3d Negligence § 8; 34A Cal. Jur. 3d Fraud and Deceit § 38.

*See Yau v. Santa Margarita Ford, Inc*., 229 Cal. App. 4th 144, 160 (2014).

On appeal, Hudacko does not meaningfully argue that he alleged outrageous conduct required for an IIED claim. Instead, Hudacko contends that whether the implant procedure "could reasonably [be] interpreted to be" hormone therapy was a factual dispute that should not have been decided at the pleading stage. But the district court did not decide that the implant procedure was in fact hormone therapy under the custody order. Instead, the district court only held that *even if* the implant procedure could be regarded as gender identity related surgery, the UCSF Individuals' conduct cannot be outrageous because the implant procedure "could reasonably [be] interpreted to be" hormone therapy under the custody order. *Fuentes v. Perez*, 66 Cal. App. 3d 163, 172 (1977) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.").

## IV. Denial of Requests for Judicial Notice

Under Federal Rule of Evidence 201, a court may take judicial notice of an "adjudicative fact" that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b). We review a district court's decision to take judicial notice for abuse of discretion, *Ritter v. Hughes Aircraft Co.*, 58 F.3d

454, 458 (9th Cir. 1995), and we hold that the district court did not abuse its

discretion here denying Hudacko's requests for judicial notice.

Hudacko contends that his requests were examples of "state-funded

involuntary human medical experimentation" relevant to "demonstrate 'the

*plausibility* of a conspiracy to use deception in the practice of involuntary human

medical experimentation,'" but these studies are not relevant here because they do

not concern the "immediate parties."  *See* Fed. R. Evid. 201 advisory committee's

note to subdivision (a) for 1972 proposed rules.

**AFFIRMED.**